**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                                             Criminal Action No. 3:07cr194

JOSEPH N. WRIGHT,

    Petitioner.

**REPORT AND RECOMMENDATION**

This matter comes before the Court for an evidentiary hearing and a Report and

Recommendation as to the Motion to Vacate, Set Aside, or Correct a Sentence filed pursuant to

28 U.S.C. § 2255 ("§ 2255 motion") by Joseph N. Wright, a federal prisoner.  On May 25, 2011,

the Court held an evidentiary hearing.  The parties have submitted proposed findings of fact and

conclusions of law (Docket Nos. 51, 52), and the matter is ripe for disposition.  For the following

reasons, the Court RECOMMENDS that Wright's claim of ineffective assistance of counsel

based on his attorney's failure to file a notice of appeal be DISMISSED, and the § 2255 motion

be DENIED.

**I. Factual and Procedural Background**

On April 18, 2007, Wright was arrested on a criminal complaint, charging him with

possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  (Docket

No. 1.)  The Court appointed David Lett as counsel to represent Wright throughout his criminal

proceedings.  (Docket No. 5; May 25, 2011 Evid. Hr'g Tr. ("Evid. Hr'g Tr."), at 4:17-19, 54:20-

55:5.)

On May 30, 2007, Wright waived indictment and pled guilty, with a written plea agreement and statement of facts, to a one-count criminal information, charging Wright with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Docket Nos. 10, 11, 12; May 30, 2007 Plea Hr'g Tr. ("Plea Hr'g Tr."), at 3:24-4:6, 22:4-19.)

On August 31, 2007, the Honorable Henry E. Hudson sentenced Wright to 87 months of imprisonment, a sentence within the advisory guideline range and below the statutory maximum. (Docket No. 19.) Wright did not file an appeal.

On September 8, 2008, the Court received Wright's § 2255 motion. (Docket No. 22.) Wright alleged two grounds of ineffective assistance of counsel. By Memorandum Opinion and Order entered December 9, 2010, the Court denied one ground of Wright's § 2255 motion and referred the remaining claim, as to whether his trial counsel rendered ineffective assistance by failing to file a notice of appeal, to the undersigned Magistrate Judge for an evidentiary hearing. (Docket Nos. 34, 35.)

This Court ordered that counsel be appointed to Wright and an evidentiary hearing scheduled as to the remaining issue raised in Wright's § 2255 motion: whether trial counsel rendered ineffective assistance by failing to file an appeal in direct contravention of Wright's orders. (Docket No. 36.) On May 25, 2011, the Court held an evidentiary hearing.

## II.  Standard of Review and Burden of Proof

A petitioner collaterally attacking his or her conviction bears the burden of proving that the conviction imposed violated the United States Constitution or laws, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. The

petitioner has the burden of proving the grounds for the collateral attack by a preponderance of the evidence. *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967); *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004). In a § 2255 proceeding, a court may hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). When making findings of fact, the court should determine the credibility of witnesses and reliability of other evidence. *See United States v. Roane*, 378 F.3d 382, 393-94, 409 n.15 (4th Cir. 2004).

### III.  Findings of Fact

Supplementing the procedural events above, the Court makes the following findings of fact based on testimony and exhibits submitted at the evidentiary hearing.

### A.      Wright's Guilty Plea

1.      At the time of his April 18, 2007 arrest, Wright informed law enforcement officers that on March 23, 2007 he had used the firearm in his possession to shoot into an occupied vehicle in Gilpin Court. (Presentence Investigation Report ("PSR") ¶¶ 12-16.) During meetings with court-appointed counsel Lett, Wright expressed concerns about potential charges in the City of Richmond based on this March 23, 2007 incident. (Evid. Hr'g Tr. 63:13-23.) Wright, after consulting with Lett, agreed that he was guilty of possession of a firearm by a convicted felon and decided to plead guilty to the federal charge and hope that any sentence received would be sufficient to satisfy considerations of any other jurisdiction considering bringing charges. (Evid. Hr'g Tr. 29:3-10, 63:13-23.) Thereafter, Wright and Lett focused on making any potential sentence as short as possible. (Evid. Hr'g Tr. 29:3-6, 63:13-23.)

2.     Wright and the Government thus negotiated a plea agreement. Prior to Wright's

plea hearing, Lett reviewed and discussed the proposed plea agreement with Wright.[1] (Evid.

Hr'g Tr. 55:23-57:21.) Lett explained that no one could accurately predict the sentence he would

receive, that Wright would waive his right to appeal any sentence imposed so long as it was

within that statutory maximum, and that Wright could not withdraw his plea if he received a

higher sentence than he had anticipated. (Evid. Hr'g Tr. 57:9-20.)

3.     On May 30, 2007, Judge Hudson conducted Wright's plea colloquy. Wright

represented to the Court that he decided to waive indictment and enter a plea of guilty to count

one of the criminal information, charging him with possession of a firearm by a convicted felon.

(Plea Hr'g Tr. 3:24-4:6.) Wright confirmed he decided to plead guilty to the charge because it

was in his best interest to do so and because he was in fact guilty of possession of a firearm by a

convicted felon. (Plea Hr'g Tr. 8:13-9:1.)

4.     Under oath, Wright informed the Court that he had had a sufficient opportunity to

discuss the case with Lett and that he was satisfied with Lett's representation:

> THE COURT: . . . . Now, Mr. Wright, prior to coming to
> court today, have you and Mr. Lett discussed this charge?
> MR. WRIGHT: Yes, Your Honor.
> THE COURT: Okay. He's gone over with you what this
> charge involved, and you understand the charge against you, is that
> right?
> MR. WRIGHT: Yes, Your Honor.

---

[1] During the plea colloquy, Wright testified under oath that he had read the plea
agreement, had discussed it with his attorney, and understood the provisions of the plea
agreement. (Plea Hr'g Tr. 9:9-25.) In contrast, at the evidentiary hearing, Wright testified that
he did not read the plea agreement and that Lett never discussed the plea agreement with him.
(Evid. Hr'g Tr. 19:10-12, 21:17-25.) The Court finds this latter testimony not credible when
viewed beside Lett's testimony at the evidentiary hearing and Wright's prior testimony during the
plea colloquy.

> THE COURT:  Are you entirely satisfied with Mr. Lett's services?
>
> MR. WRIGHT:  Yes, Your Honor.
>
> THE COURT:  Has he done everything reasonable you have asked him to do?
>
> MR. WRIGHT:  Yes, Your Honor.
>
> THE COURT:  Has he explained to you what the government must prove to convict you of this charge?
>
> MR. WRIGHT:  Yes, Your Honor.
>
> . . . .
>
> THE COURT:  . . . . Has Mr. Lett also gone over with you what the government's evidence against you would have been if the case had gone to trial?
>
> MR. WRIGHT:  Yes, Your Honor.
>
> . . . .
>
> THE COURT:  Based upon those discussions, have you and Mr. Lett discussed whether you're actually guilty of this charge?
>
> MR. WRIGHT:  Yes, Your Honor.
>
> THE COURT:  You've had a chance to discuss whether you have any kind of a legal defense, or you can beat the charges, you've been through all that with Mr. Lett, is that right?
>
> MR. WRIGHT:  Yes, Your Honor.
>
> . . . .
>
> THE COURT:  Do you feel like you need anymore [sic] time to discuss your plea of guilty with your attorney, Mr. Lett?
>
> MR. WRIGHT:  No, Your Honor.

(Plea Hr'g Tr. 5:20-6:11, 7:4-7, 8:1-9, 20:18-21.)  Wright further represented to the Court that he had had a sufficient opportunity to discuss both the written plea agreement and statement of facts with Lett.  (Plea Hr'g Tr. 9:9-25, 19:14-25, 20:18-21.)

5.      Wright confirmed that he understood the charge in count one and the penalties that the charge carried:

> THE COURT:  Mr. Wright, what is the maximum sentence you could receive upon being convicted of this charge?
>
> . . . .
>
> MR. WRIGHT:  Ten.
>
> THE COURT:  Ten years.

(Plea Hr'g Tr. 14:25-15:8.) He also affirmed that while he had discussed sentencing possibilities with Lett, Wright understood that no agreement as to sentencing existed and that the Court would determine Wright's sentence guided by the Sentencing Guidelines and 18 U.S.C. § 3553(a). (Plea Hr'g Tr. 10:19-25, 15:25-16:24.) Wright told the Court that he understood that any estimate regarding the ultimate sentence imposed could only be a prediction, and did not constitute a promise on which he could rely to enter into a guilty plea. (Plea Hr'g Tr. 16:16-24.) Wright further confirmed that he understood that the Court could depart upward or downward from the Sentencing Guidelines if appropriate. (Plea Hr'g Tr. 17:9-17.)

      6.     The Court notified Wright, and Wright indicated that he understood, that if the Court accepted his guilty plea, Wright's ability to appeal would be severely limited:

> THE COURT: Now, in Paragraph Number 6 of your plea agreement, you've waived your right of appeal with respect to sentencing. I want to discuss that with you for a minute. As long as I give you ten years -- I have no idea what sentence you're going to receive. I have no idea. We're just talking by way of illustration so you understand it, okay?
>
> MR. WRIGHT: Okay.
>
> THE COURT: I don't know anything about you. But if I were to decide to give you ten years, you know you can't appeal that. No matter how unfair you may think that is and you say that's just too much time, as long as I give you ten years or less, you can't appeal. End of the road. Do you understand that?
>
> MR. WRIGHT: Yes, Your Honor.
>
> THE COURT: Now, when it comes to calculating the Guidelines, if you think that the probation officer has made a mistake in doing the Guidelines, you and your lawyer, Mr. Lett, will file an objection, I will hear the argument, and if I say, you know, I disagree with you, the probation officer was right, you're wrong; you can't appeal that. My decisions on the Guidelines are final and are not appealable, do you understand?
>
> MR. WRIGHT: Yes, Your Honor.
>
> THE COURT: .... You've waived your right of appeal; do you understand?
>
> MR. WRIGHT: Yes, Your Honor.

(Plea Hr'g Tr. 17:23-18:21, 18:25-19:2; *see also* Evid. Hr'g Tr. 10:4-11.)  Wright also confirmed

that he had read, signed, and understood the written plea agreement.  (Plea Hr'g Tr. 9:9-22.)  The

plea agreement states that Wright "knowingly waives the right to appeal the conviction and any

sentence within the statutory maximum described above (or the manner in which that sentence

was determined) . . . in exchange for the concessions made by the United States in this plea

agreement."  (Plea Agreement ¶ 6.)  (Docket No. 11.)

       7.     Wright entered a plea of guilty to possession of a firearm by a convicted felon.

(Plea Hr'g Tr. 21:25-22:4.)  The Court accepted Wright's plea of guilty and made the finding that

his plea of guilt was "voluntarily, knowingly, and intelligently entered with the understanding of

the nature of the charge, the consequences of the plea, and the penalty provisions" faced.  (Plea

Hr'g Tr. 22:8-10.)  The Court further found that Wright entered into the guilty plea after

thoroughly consulting with Lett.  (Plea Hr'g Tr. 22:12-14.)

**B.**     **Wright's Sentencing Hearing**

       8.     Prior to the sentencing hearing, Lett mailed Wright a copy of his PSR and visited

Wright to discuss the PSR in detail and answer any questions.  (Evid. Hr'g Tr. 58:19-59:16.)

Lett informed Wright that his advisory guideline range was 70-87 months of imprisonment.

(Evid. Hr'g Tr. 61:17-20.)  Lett and Wright also discussed a four-point enhancement included in

the PSR for use of the firearm in connection with another felony based on Wright's admission

that on March 23, 2007 he had fired the weapon into an occupied vehicle.  (Evid. Hr'g Tr. 59:17-

60:3, 61:7-15; PSR ¶ 17.)  On April 24, 2007, Richmond City Police had issued a warrant for

Wright's arrest, "charging him with Attempted Murder, Use of a Firearm (2 counts), Shoot Into

Occupied Vehicle (2 counts), and Possession of a Firearm by a Convicted Felon."  (PSR ¶ 16.)

At Wright's request, Lett had filed an objection to the enhancement.  (Evid. Hr'g Tr. 60:4-11.)

However, prior to sentencing, Lett advised Wright to withdraw the objection, informing him that eliciting testimony about the incident might not be in his best interest and might result in the Court considering the incident to be an aggravating factor. (Evid. Hr'g Tr. 60:13-61:12.) Wright agreed that the objection should be withdrawn. (Evid. Hr'g Tr. 61:7-15.)[2] Consistent with this decision and shortly before sentencing, counsel for Wright filed a document entitled Position of Defendant with Respect to Sentencing Factors that is silent as to any objection and further states that "there are no facts or factors material to sentencing that are reasonably in dispute." (Position of Def. with Respect to Sentencing Factors 1.) (Docket No. 17.)

9.      On August 31, 2007, Judge Hudson presided over Wright's sentencing hearing. The Court informed Wright and counsel of record that Wright's PSR concluded that Wright's offense level totaled 21, that he fell within criminal history category V, and that his guideline range therefore fell between 70 to 87 months of imprisonment. (Aug. 31, 2007 Sentencing Hr'g Tr. ("Sentencing Hr'g Tr."), at 3:14-17.) Lett confirmed that he had received the PSR and the computation of the guidelines and had discussed both documents with Wright. (Sentencing Hr'g Tr. 2:17-23.)[3]

10.      At the sentencing hearing and on the record, Lett confirmed that Wright withdrew the objection to the four-point enhancement. (Sentencing Hr'g Tr. 3:22-4:1; Evid. Hr'g Tr. 61:7-

_____

[2] Considering the record before this Court, Wright's testimony that he did not know about the four-point enhancement and did not agree to the withdrawal of the objection lacks credibility. (*See* Evid. Hr'g Tr. 29:21-24, 30:25-31:21, 32:12-22.)

[3] In contrast, Wright testified at the evidentiary hearing that he did not discuss the PSR with Lett prior to sentencing and that he did not know that his guideline range was 70-87 months. (Evid. Hr'g Tr. 37:12-38:3.) Having considered the testimony given at the evidentiary hearing and having reviewed the sentencing hearing transcript, the Court finds Wright's testimony lacks credibility.

15.) Lett explained that the City of Richmond "ha[d] some pretty serious charges coming" based on that conduct. (Sentencing Hr'g Tr. 5:9-10.) Lett explained that challenging the enhancement "would require producing evidence that may be better left to his defense counsel in Richmond." (Sentencing Hr'g Tr. 5:24-6:1.) Lett and Wright ultimately decided to withdraw the objection, determining that "discretion would be a better route in this case." (Sentencing Hr'g Tr. 4:5; *see also* Evid. Hr'g Tr. 63:13-23.)

      11.    The Court adopted the PSR's factual findings and conclusions and heard argument of counsel as to sentencing. (Sentencing Hr'g Tr. 3:5-21, 4:16-6:10.) The United States recommended a sentence at the high end of the guideline range. (Sentencing Hr'g Tr. 5:3-4.) Wright recommended a sentence at the low end of the guideline range. (Sentencing Hr'g Tr. 6:8-10.) The Court considered the March 23, 2007 shooting incident to be "an extremely aggravating circumstance." (Sentencing Hr'g Tr. 6:25-7:1.) The Court also weighed Wright's prior criminal history, which included convictions for "possession with intent to distribute cocaine; two obstructions of justice; concealed weapon; disorderly conduct; [and] a hit-and-run." (Sentencing Hr'g Tr. 7:3-5.) Based on Wright's prior record and the facts of the case, the Court found "that respect for the law, deterrence, and protection of the community dictates a sentence at the upper end of the Guidelines." (Sentencing Hr'g Tr. 7:12-15.) The Court thus sentenced Wright to 87 months of imprisonment, a sentence at the high end of the guideline range but below the statutory maximum of 10 years. (Sentencing Hr'g Tr. 7:15-18.)

      12.    At the conclusion of the sentencing, the Court stated to Wright:

> Now, Mr. Wright, as a part of your plea agreement, you have waived your right of appeal as to almost every issue in this case, but if you feel I have done anything unlawful, please let Mr. Lett know

because any appeal you wish to make to the U.S. Court of Appeals for
the Fourth Circuit must be noted within ten days of today.

(Sentencing Hr'g Tr. 10:15-21.)

### C.    Wright's Account of His Post-Sentencing Communications with Lett

13.    At the evidentiary hearing, Wright testified that immediately following his

sentencing, while still located in the courtroom at counsel table, he had a brief conversation with

Lett in which Wright requested that Lett appeal his case. (Evid. Hr'g Tr. 4:20-5:3, 12:8-12.)

Wright testified that, in response, Lett said Wright could not appeal and refused to provide

assistance. (Evid. Hr'g Tr. 5:6-8.) At the evidentiary hearing, Wright contended that he wanted

to appeal his sentence, specifically the four-point enhancement he received for use of the firearm

in the commission of another felony. (Evid. Hr'g Tr. 8:3-22, 11:2-8.)

14.    Wright further testified that while he was held at the regional jail, his mother,

Arlene Mumford,[4] established a three-way conference call with Lett. (Evid. Hr'g Tr. 5:10-14,

6:12-25, 35:5-7.) Wright testified that this three-way call occurred about a week or two after his

sentencing. (Evid. Hr'g Tr. 5:10-14, 6:12-18.) Wright testified that, during this three-way call,

he asked Lett to appeal his case and Lett again told Wright he could not appeal. (Evid. Hr'g Tr.

5:14-16, 7:2-6.)

15.    Mumford also testified at the evidentiary hearing as to a three-way phone

conversation between her, Wright, and Lett. (Evid. Hr'g Tr. 39:21-40:10.) Mumford stated that,

at some point after his sentencing, Wright asked her to initiate a three-way call with Lett and she

---

[4] In briefing, counsel for Wright refers to this same person as "Munford." (*See* Wright's Pre-Hearing Proposed Findings of Fact and Conclusions of Law for Defendant's § 2255 Hearing ¶ 4.) The Court is unsure of the correct spelling, but for purposes of clarity will refer to Wright's mother as Mumford, as does the evidentiary hearing transcript.

complied. (Evid. Hr'g Tr. 39:21-40:10.) Mumford testified that during this conversation Wright

asked for an appeal and Lett stated Wright could not appeal because of a waiver. (Evid. Hr'g Tr.

40:21-24, 43:17-44:1.) Mumford testified that she did not listen to the entire conversation.

(Evid. Hr'g Tr. 41:23-42:25.) Further, Mumford could not remember how long after sentencing

this phone conversation took place. (Evid. Hr'g Tr. 41:1-5, 44:7-16.)

      16.    Wright's sister, Leander[5] Wright (hereinafter "Ms. Wright"), testified that she also

established a three-way phone call between her, Wright, and Lett. (Evid. Hr'g Tr. 46:6-47:11.)

Ms. Wright testified that Wright asked Lett to appeal during this phone call and Lett said that

Wright had waived his appeal rights. (Evid. Hr'g Tr. 48:9-12.) Ms. Wright also testified that

Wright asked Lett for paperwork so he could file an appeal himself, and Lett told Wright to make

a formal request for documents in a letter. (Evid. Hr'g Tr. 48:15-20.) Although Ms. Wright did

not attend the sentencing hearing and did not know the date or even the year of the sentencing

hearing, she testified that this three-way phone call took place about two or three weeks after

Wright's sentencing. (Evid. Hr'g Tr. 46:11-47:11, 49:9-50:10.)

      17.    In contrast, Wright testified that the three-way phone conversation between him,

Mumford, and Lett constituted the only phone conversation with Lett after sentencing and that

his sister, Ms. Wright, did not initiate a three-way call on his behalf with Lett. (Evid. Hr'g Tr.

36:7-37:10.)

---

[5] In briefing, counsel for Wright refers to this same person as "Leanda." (*See* Wright's Pre-Hearing Proposed Findings of Fact and Conclusions of Law for Defendant's § 2255 Hearing ¶ 3.) The Court is unsure of the correct spelling, but for purposes of clarity will refer to Wright's sister as Leander, as does the evidentiary hearing transcript.

18.     Wright also stated that he asked for an appeal in a letter mailed to Lett in November of 2007, but received no response from Lett. (Evid. Hr'g Tr. 7:12-15, 12:17-20.)[6] Wright, however, later admitted that this letter did not mention an appeal and instead asked for documents so that he could work on his case and try to get a sentence reduction. (Evid. Hr'g Tr. 12:17-13:1, 19:4-9.)

19.     Despite these alleged conversations with Lett, Wright never notified the Court or anyone else regarding Lett's failure to file an appeal as purportedly requested. (Evid. Hr'g Tr. 13:25-16:2.) Further, although Wright knew he had only ten days from judgment to note an appeal, Wright did not take any action to file a *pro se* notice of appeal. (Evid. Hr'g Tr. 12:2-6, 13:25-16:2.)

### D.     Lett's Account of His Post-Sentencing Communications with Wright

20.     In contrast, Lett testified that Wright did not request an appeal immediately after sentencing and that no conversation about an appeal took place in the courtroom immediately after sentencing. (Evid. Hr'g Tr. 61:23-62:10.)

21.     Lett testified that the first communication he received from Wright after sentencing was the letter from Wright mailed in November 2007. (Evid. Hr'g Tr. 12:17-20, 62:20-23, 65:3-5.) This letter did not mention an appeal, and instead requested copies of certain

---

[6] During the evidentiary hearing, the Government marked this letter as Government's Exhibit 1 for identification purposes, but failed to move for its admission into evidence. Thus, the Court may only rely on testimony about the letter, to which neither party noted any objections.

documents. (Evid. Hr'g Tr. 65:8-9.) In response, Lett mailed a letter and copies of the requested documents to Wright. (Evid. Hr'g Tr. 65:8-66:9.)[7]

22.     Lett testified that the next communication he received from Wright occurred over a three-way telephone call about two months after receipt of this November 2007 letter and about four to five months after Wright's sentencing. (Evid. Hr'g Tr. 62:12-25.) Lett stated that a female initiated the three-way phone conversation, but Lett could not identify the third person. (Evid. Hr'g Tr. 62:25-63:2.) Lett testified that, during this phone call, Wright inquired about the prosecution in the City of Richmond and never discussed or mentioned an appeal. (Evid. Hr'g Tr. 63:14-64:14.) Lett stated that this was the only phone conversation he had with Wright after sentencing. (Evid. Hr'g Tr. 63:7-9, 69:17-22.)

23.     Lett testified that Wright never requested that Lett file an appeal of his case and never at any time indicated a desire to appeal his case. (Evid. Hr'g Tr. 66:23-67:3, 68:18-23, 69:4-9.) Lett also described his typical practice with regard to filing a notice of appeal. (Evid. Hr'g Tr. 67:8-25.) Lett stated that had Wright timely asked Lett to appeal his case, he would have tried to find issues to appeal, would have discussed these options with Wright, and would have filed the notice of appeal. (Evid. Hr'g Tr. 67:8-25.)

E.     Lett's Version of Events Is More Credible than Wright's

24.     Having considered the above and having weighed the credibility of the witnesses, the Court finds Lett's version of events to be more credible. First, considering Ms. Wright's vague recollection, her admission that she could not recall the year of Wright's sentencing, and

---

[7] During the evidentiary hearing, the Government marked this letter as Government's Exhibit 3 for identification purposes, but failed to move for its admission into evidence. Thus, the Court may only rely on testimony about the letter, to which neither party noted any objections.

Wright's contradictory testimony that his sister was not involved in a three-way phone conversation with Lett after sentencing, the Court attaches little to no weight to Ms. Wright's testimony.

25.     Second, given Wright's conflicting statements made under oath, the Court finds that Wright's sworn testimony carries little weight. *Cf. United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'") (internal citations omitted).  Because he has evinced a capacity to provide whatever testimony most advances his current position, Wright's testimony regarding his requests to appeal and the timing of those requests lacks the ring of truth.  Because Mumford could not recall the time frame of the three-way phone conversation she initiated and because she did not listen to the entire phone conversation between Lett and Wright, her testimony does little to buttress Wright's story.  In contrast, Lett testified credibly that Wright never asked for an appeal, that the first communication he received from Wright was the November 2007 letter, and that a few months after receipt of the letter Wright contacted Lett through a three-way phone conversation.

26.     Third, the record demonstrates that Wright pled guilty to possession of a firearm by a convicted felon with the hope that other jurisdictions would not pursue charges based on the shooting incident.  Similarly, Wright chose to withdraw his objection to the four-level enhancement because he did not want to put on evidence that might later be used against him in future state prosecutions and did not want to draw further attention to the shooting incident. Wright's current claim that he wished to appeal his sentence based on the four-point enhancement cannot be reconciled with the record before the Court.

27.     Finally, the record before the Court further conveys that Wright knew of the ten-day time limit to file an appeal.  Despite his testimony that Lett refused to file an appeal as requested on multiple occasions, Wright took no action to file a *pro se* notice of appeal or protest Lett's refusals.  Wright's failure to act and silence creates a strong inference that he made no such appeal request.

28.     Ultimately, the Court finds that Wright never made a timely request that Lett file an appeal and never expressed an interest in appealing his case.

## IV. Analysis

### A.     Standard of Review for a Claim of Ineffective Assistance of Counsel for Failure to File an Appeal

The standard set forth by the Supreme Court of the United States in *Strickland v. Washington* governs claims of ineffective assistance of counsel.  466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that the Sixth Amendment guaranteed a criminal defendant's right to reasonably effective assistance of counsel.  *Id.* at 687.  To prove a constitutional claim for ineffective assistance of counsel, the petitioner must first show that his or her counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688.  Second, the petitioner must demonstrate actual prejudice from the deficiency.  *Id.* at 694.

In conjunction with *Strickland*, the decision of the Supreme Court in *Roe v. Flores-Ortega* governs ineffective assistance of counsel claims for failure to file a notice of appeal.  *See* 528 U.S. 470 (2000).  In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. This determination must take into account "all the information counsel knew or should have known." *Id.*

If a consultation about appeal has occurred, counsel performs deficiently only by failing to follow the defendant's express instructions with respect to an appeal. *Id.* at 478. "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993). Moreover, "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement [because the defendant has waived his right to appeal] and harmful to the client's interests." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

If the attorney received no express instruction to file a notice of appeal, and no consultation has occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478. The prejudice prong of *Strickland* requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.* at 484. "Thus, to prevail on an ineffective assistance claim for failing to note an appeal, a defendant need not 'demonstrate that his hypothetical appeal might have had merit,' but rather only that 'but for counsel's deficient conduct, he would have appealed.'" *Jiminez v. Vaughan*, No. 3:07cv639, 2008 WL 2329767, at *3 (E.D. Va. June 5, 2008) (*quoting Flores-Ortega*, 528 U.S. at 486).

16

### B.   Wright's Claim Fails

### 1.   Wright Did Not Timely Instruct Lett to File an Appeal

The record demonstrates that Wright did not ask Lett to file an appeal within the ten-day period following his sentencing. The testimony that he did ask Lett to file an appeal lacks credibility. For instance, any claim that Wright sought to appeal the four-point enhancement cannot be matched credibly against a record in which Wright sat silent in court when his attorney, after filing a written document indicating that no reasonable dispute existed as to facts material to sentencing, stated during sentencing that they agreed to withdraw the objection to the four-point enhancement. Conversely, Lett testified credibly that Wright never asked him to file an appeal after he was sentenced, or in any conversation after sentencing.

Additionally, Wright received information regarding the procedure for filing an appeal. The Court informed Wright during the sentencing hearing that he had to file any notice of appeal within ten days. Nevertheless, Wright failed to timely protest to the Court Lett's alleged failure to file an appeal. Further, Wright failed to take independent measures to file an appeal within ten days.

### 2.   Lett Had No Duty to Consult with Wright Regarding an Appeal

Absent an express instruction to file a notice of appeal, the Court must consider whether Lett had a duty to consult with Wright about an appeal. *Flores-Ortega*, 528 U.S. at 480. The Constitution requires counsel to consult with the defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* "Consult," as defined by the Supreme Court, means to advise "the defendant about the advantages and disadvantages of

17

taking an appeal, and [make] a reasonable effort to discover the defendant's wishes." *Id.* at 478. Whether the defendant proceeded to trial or pled guilty becomes a highly relevant factor to this inquiry. *Id.* If the defendant pled guilty, the court should consider whether the defendant received the sentence bargained for in a plea agreement and whether the defendant waived some or all rights to appeal in the plea agreement. *Id.*

The Court finds that Lett had no duty to consult with Wright about an appeal because the record demonstrates that a rational defendant in Wright's position would not have pursued an appeal. First, Wright pled guilty to possession of a firearm by a convicted felon. Wright admitted he was guilty of the federal charge and pled guilty in the hopes that a federal sentence would dissuade other jurisdictions from pursuing charges based on the March 23, 2007 shooting incident. Wright received a sentence within the guideline range and below the statutory maximum, a sentence contemplated as part of the plea. Wright waived appeal. Wright cannot demonstrate any basis as to why a rational defendant would want to appeal his conviction.

Second, Wright has failed to demonstrate that a rational defendant would want to appeal his sentence. Although Wright originally objected to the four-point enhancement based on the March 23, 2007 shooting incident, he withdrew that objection prior to sentencing. This withdrawal occurred on the record. At the time of sentencing, the City of Richmond had indicated an intent to file charges against Wright. Wright did not challenge the four-point enhancement because he did not want to place evidence on the record that could later be used against him in future state proceedings. Given the absence of any objection to the four-point enhancement, Judge Hudson adopted the guidelines as computed by the probation officer.

Although Wright received a sentence at the high end of the advisory guideline range, Judge Hudson selected Wright's sentence after making an individualized assessment of his case, and any challenge to the reasonableness of that sentence would face a highly deferential standard on appeal. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008). Wright's sentence was also within the advisory guideline range and thus is presumptively reasonable. *United States v. Mendoza-Mendoza*, 597 F.3d 212, 217 (4th Cir. 2010). Based on these considerations, Wright cannot demonstrate that a rational defendant would have wanted to appeal his sentence.

Finally, Wright failed to demonstrate that he showed any interest in filing an appeal during the ten-day appeal period. While Wright and other witnesses contend he explicitly requested an appeal, the Court finds that testimony incredible. Lett, however, testified credibly that Wright never requested an appeal of the case and instead was more concerned about potential state proceedings. Accordingly, the Court finds that Lett's failure to consult with Wright regarding an appeal does not fall below constitutional standards.

## V. Conclusion

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS Wright's remaining claim and DENY the § 2255 motion.

Wright is ADVISED that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections in a timely manner to the Report and Recommendation may result in the entry of an Order dismissing the § 2255 motion. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v.*

*Collins*, 766 F.2d 841, 845 (4th Cir. 1985) (noting the general rule that "a party who fails to

object to a magistrate's report is barred from appealing the judgment of a district court adopting

the magistrate's findings").

Let the Clerk send a copy of the Report and Recommendation to all counsel of record and

to the Honorable Henry E. Hudson.

And it is so ORDERED.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 11-9-11

20